Samuel H. Hoestadteb, J.
The egoeentricity which appears to be indigenous to “ show business ” is here manifested by the passionate insistence of a well-known motion-picture actress to have her name emblazoned on Broadway not only in the same type of the same size, but also on the same line, as that of her male lead. Such vanity — “ the frail estate of human things ”, a “ splendid but destructive egotism ”, as it has variously been called — doubtless is due in measurable part to the adulation which the public showers on the denizens of the entertainment world in a profusion wholly disproportionate to the instrinsic contribution which they make to the scheme of things when seen in correct perspective. For that matter often in disproportion to any true talent, latent or apparent!
*603 Sophia Loren, the world-famed winner of the New York Film Critics’ Award as the outstanding motion picture actress of 1961, and a corporation, owning the exclusive right to her services, of which her husband, Carlo Ponti is the president and sole stockholder, as plaintiffs, have brought this action for an injunction against the producer and the distributor of the epic motion picture “El Cid”, which opened at the Warner Theatre in this city on December 14, 1961 and is being shown there to capacity houses. The owner and operator of the Warner Theatre is also a defendant in the action. The plaintiffs now move for injunctive relief during the pendency of the action substantially the same as they would obtain if successful at the trial.
Sophia Loren plays the leading female role of Chimene in ‘ ‘ El Cid ’ ’; the part of “ El Cid ’ ’, a national hero of Spain, is taken by Charlton Heston. The plaintiffs’ asserted grievance is that Miss Loren has not received the billing to which a written agreement of October 14, 1960, entitles her. This agreement provides that in all paid advertising of “El Cid ’ ’ Miss Loren is to be accorded “ second (2nd) star billing above the title, 100% the size and type of the title, on the same line, same size, same prominence as that used for Charlton Heston, who received first (1st) star billing.” The plaintiffs complain of noncompliance with the foregoing provisions, especially in the design of electrically illuminated upright signs, on which the name of Sophia Loren appears below that of Charlton Heston, and the type of their names is different and smaller than that of the title ‘ ‘ El Cid ’ ’. The names of the two top stars on these signs, are, however, in the same size type and there is no differentiation in prominence, except insofar as the position of one above the other may imply. Moreover, on the marquee in front of the Warner Theatre facing Broadway their names are on the same line. The defendants dispute that they are doing anything in derogation of the plaintiffs’ rights; they rely on the billing clause of a later employment agreement fully complied with, which, they say, either binds the plaintiffs contractually or which, in the light of their conduct, equity and good conscience will not permit the plaintiffs now to disavow.
In view of the disposition to be made, further statement of the facts or detailed analysis of the conflicting contentions of the parties will not be fruitful. It suffices for present purposes that study of the papers persuades me that the case presents substantial issues as to the plaintiffs’ ultimate rights. There is also a genuine question whether, even if the plaintiffs’ claims under the billing clause of the October 14, 1960 agreement are *604 upheld, Miss Loren is really in danger of suffering the loss of prestige and other damage attributed to its nonobservance. The injunction prayed for would do far more than preserve the status quo, for the plaintiffs demand the removal of the electric signs and changes in the advertising program for the picture. Under established authority, the plaintiffs’ rights at this juncture are not so clear as to warrant such an injunction and the motion therefor is denied (Bachman v. Harrington, 184 N. Y. 458; Gilbert v. Burnside, 6 A D 2d 834, 835; Durante v. Paramount Pictures Corp., 111 N. Y. S. 2d 138).
However, an early trial is indicated. The case is placed at the head of the General Equity Calendar of February 19, 1962, for which date the Clerk is directed to accept a note of issue on payment of his fees. Statement of readiness is dispensed with.